UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TERRENCE BANKS,

     Petitioner,

v.

KENNETH MCKEE,

     Respondent.

Case No. 14-cv-13566
Honorable Laurie J. Michelson
Magistrate Judge R. Steven Whalen

---

## OPINION AND ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS [1], DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO APPEAL IN FORMA PAUPERIS.

---

Petitioner Terrence Banks is currently serving a prison sentence in the Thumb Correctional Facility in Lapeer, Michigan. He filed a *pro se* petition for a writ of habeas corpus in this Court, challenging his state-court convictions for, among other offenses, assault with intent to commit murder. Having reviewed the petition, the warden's response, Petitioner's reply brief, and the state-court record, the Court finds that the state court reasonably concluded that Petitioner's claims of error were without merit. Therefore, the petition will be DENIED.

**I.**

Although the following recitation of the facts is taken primarily from the Michigan Court of Appeals' opinion, *see* 28 U.S.C. § 2254(e)(1), it is supplemented by portions of the trial transcript, *see Wood v. Allen*, 558 U.S. 290, 300 (2010) (recognizing that it is unsettled whether the deference owed to state-court factual findings under § 2554(e)(1) applies when the state court adjudicates a claim on the merits such that § 2254(d)(2) applies).

Petitioner's conviction arose out of the shooting of a taxi driver in Detroit. Petitioner was not present in the courtroom during the trial. (R. 11-8, PID 305; R. 11-9, PID 490.) The jury heard the following evidence at trial.

On March 30, 2011, the victim, Mian Mayen, was working as a cab driver for Checker Cab. (R. 11-9, PID 506.) At 10:00 pm, he responded to a call to pick up a customer at 4614 Stockton in Detroit. (*Id.*) Defense counsel stipulated that the person Mayen picked up was Petitioner. *People v. Terrence Banks*, No. 308181, 2013 Mich. App. LEXIS 696, at *2 (Ct. App. Apr. 16, 2013); (R. 11-9, PID 507). Petitioner put $20 in the deposit box and asked to be taken to Mack and Seyburn in Detroit. *Id.* After Mayen began driving, Petitioner asked him where he was from and "what's your belief . . . what's your religion?" (R. 11-9, PID 512.) Mayen answered these questions and Petitioner fell silent. *Banks*, 2013 Mich. App. LEXIS 696, at *2.

As the cab approached Seyburn and Mack, Petitioner asked Mayen to let him out. *Id.* When Mayen stopped, Petitioner fired several gun shots at him through the partition in the cab. *Id.* Mayen felt pain in his back but couldn't see where he had been hit. (R. 11-9, PID 515.) Petitioner then fired another gunshot and demanded money—"give me my money back." (*Id.*) Mayen threw the money outside the cab and told Petitioner to "keep it." *Banks*, 2013 Mich. App. LEXIS 696, at *2. Petitioner then shot Mayen for the fourth time. *Id.* The bullet hit Mayen's back and came out of his stomach. (R. 11-9, PID 517.)

Realizing that Petitioner was not going to get out of his cab, Mayen decided "I have to go to hospital or the police" and started driving. (R. 11-9, PID 518.) Petitioner continued firing for a total of seven or eight shots. *Banks*, 2013 Mich. App. LEXIS 696, at *2. Mayen testified that he was certain he was going to die at this point. *Id.* So he drove the cab at a speed of 70 miles per hour, running several red lights in order to get the attention of the police. *Id.* Petitioner was still

2

in the car at this point, ordering Mayen to let him out and hitting the taxi partition. *Id.* Finally, Mayen came upon a police vehicle at Connor and Harper, and began honking his horn, flashing his high beams, and waving at the police in order to get their attention. *Id.*

In the police car were officers Ryan May and Christopher Hardwood. May was driving the police vehicle, and he pulled over after seeing Mayen flashing his high beam lights. *Id.* May noticed that Mayen was "covered with blood," and upon shining his light into the backseat, saw "a gentleman [with] an assault rifle and it looked like he was trying to hide it." (R. 11-9, PID 541.) Mayen told May that the person in the backseat had shot him. *Banks*, 2013 Mich. App. LEXIS 696, at *2. May told Hardwood that the person in the backseat had a gun, and Hardwood then exited the vehicle, ran to the cab, and opened the rear door. *Id.* A black assault rifle fell to the ground. *Id.* The officers then arrested Petitioner and searched him for additional weapons. *Id.* They found a brown paper bag filled with nine millimeter ammunition (that would correspond with the assault rifle) on Petitioner's person. *Id.*; (R. 11-9, PID 544.) The officers then arrested Petitioner. *Id.* Mayen survived the gunshot wounds after surgery and a hospital stay. *Id.*

A jury convicted Petitioner of the following offenses: assault with intent to commit murder, Mich. Comp. Laws § 750.83; assault with intent to do great bodily harm less than murder, Mich. Comp. Laws § 750.84; felon in possession of a firearm, Mich. Comp. Laws § 750.224f; possession of a firearm in the commission of a felony, second offense, Mich. Comp. Laws § 750.227b. (R. 11-1, PID 126.) The jury acquitted him on a charge of armed robbery. (*Id.*) Petitioner was sentenced as a fourth felony habitual offender, Mich. Comp. Laws § 769.12.

The Michigan Court of Appeals affirmed Petitioner's convictions. *Banks*, 2013 Mich. App. LEXIS 696, at *2. The Michigan Supreme Court denied leave to appeal on October 28, 2013, because it was "not persuaded that the questions presented should be reviewed by this

Court." *People v. Banks*, 838 N.W.2d 165, 165 (Mich. 2013). Petitioner filed his petition in this Court on September 9, 2014. (R. 1.) The Court granted Petitioner leave to amend his petition, and he filed an amended petition on October 29, 2015. (R. 13.) Petitioner's amended petition asserts the following grounds for relief:

> (1) Petitioner did not knowingly, intelligently, unequivocally or voluntarily waive his right to counsel because he was not warned of the dangers of self-representation, the trial court did not adequately inquire into petitioner's background, education, age or mental state, and Petitioner only asked to represent himself because his trial counsel was unprepared;

> (2) The trial judge failed to obtain a reaffirmation of petitioner's waiver of his right to counsel at subsequent hearings;

> (3) The trial judge violated the Double Jeopardy Clause by instructing the jury on assault with intent to commit murder and the lesser offense of assault with intent to do great bodily harm;

> (4) Petitioner's right to confrontation was violated when the victim was permitted to wear a hood to hide his identity at the preliminary examination;

> (5) The prosecutor withheld exculpatory evidence by permitting the victim to conceal his identity at the preliminary examination;

> (6) Petitioner was constructively denied the assistance of counsel at the preliminary examination because his counsel met with him only a few minutes before the preliminary examination and did not object to the examining magistrate permitting the victim to wear a hood at the preliminary examination; and

> (7) The prosecutor committed misconduct.

(*See* R. 13.)

## II.

As a preliminary matter, Respondent argues that Petitioner filed his amended petition after the statute of limitations expired, and therefore, claims raised for the first time in the amended petition are time-barred. The Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214 ("AEDPA") applies to all habeas petitions filed after the

Act's effective date, April 24, 1996, and imposes a one-year limitations period. 28 U.S.C. § 2244(d)(1). This one-year limitation period does not begin to run until 90 days after the conclusion of direct appeal. *See Jimenez v. Quarterman*, 555 U.S. 113, 120 (2009) (stating that a conviction becomes final when "the time for filing a certiorari petition expires"); *Lawrence v. Florida*, 549 U.S. 327, 333 (2007). Here, the Michigan Supreme Court denied leave to appeal on October 28, 2013, and the time for seeking a writ of certiorari with the United States Supreme Court expired on January 26, 2014. Petitioner dated his federal habeas petition on September 9, 2014. (R. 1.) Petitioner dated his amended petition October 12, 2015. (R. 13, PID 888.) Respondent acknowledges that petitioner's original habeas petition was timely filed. However, Respondent says that Petitioner's *Brady*[1] claim, his double jeopardy claim, his error in instructions claim, his confrontation clause claim, his ineffective assistance of counsel at the preliminary examination claim, and his prosecutorial misconduct claim from the preliminary examination do not relate back to the claims raised by petitioner in his original habeas petition.

When a habeas petitioner files an original petition within the one-year deadline, and later presents new claims in an amended petition that is filed after the deadline passes, the new claims will relate back to the date of the original petition only if the new claims share a "common core of operative facts" with the original petition. *Mayle v. Felix*, 545 U.S. 644, 664 (2005). And in this case, Petitioner did raise a double jeopardy claim, a confrontation clause claim, an ineffective assistance of counsel claim, and a prosecutorial misconduct claim in his original petition, even if the claims presented in his original petition were somewhat conclusory and unsupported. And Petitioner's *Brady* claim appears to be related to his confrontation clause claim. Thus, it appears that *Mayle's* test for relation back is met.

---

[1]*Brady v. Maryland*, 373 U.S. 83, 87 (1963).

Even if the claims do not all relate back, "judicial economy sometimes dictates reaching the merits [of a claim or claims] if the merits are easily resolvable against a petitioner while the procedural bar issues are complicated." *Barrett v. Acevedo,* 169 F.3d 1155, 1162 (8th Cir. 1999) (internal citations omitted). Because the statute of limitations does not constitute a jurisdictional bar to habeas review, a federal court can, in the interest of judicial economy, proceed to the merits of a habeas petition. *See Smith v. State of Ohio Dep't of Rehabilitation,* 463 F.3d 426, 429, n.2 (6th Cir. 2006) (quoting *Trussell v. Bowersox,* 447 F.3d 588, 590 (8th Cir. 2006)). This Court need not resolve the dispute over the timeliness of the claims in the amended petition. Assuming without deciding that the amended petition was timely, it fails on the merits. *See Ahart v. Bradshaw,* 122 F. App'x 188, 192 (6th Cir. 2005).

## III.

The standard of review this Court applies to each of Petitioner's claims depends on whether the claim was "adjudicated on the merits in State court[.]" 28 U.S.C. § 2254(d); *see also Johnson v. Williams*, 568 U.S. 289 (2013). If the Michigan Court of Appeals decided a claim "on the merits," AEDPA prohibits this Court from granting habeas corpus relief unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *See* 28 U.S.C. § 2254(d). But "[w]hen a state court does not address a claim on the merits, . . . 'AEDPA deference' does not apply and [this Court] will review the claim de novo." *Bies v. Sheldon*, 775 F.3d 386, 395 (6th Cir. 2014).

6

## A.

Petitioner's first claim concerns his issues with his appointed attorneys and his attempt to waive his right to counsel shortly before trial. At the final pre-trial conference, Petitioner had the following exchange with the trial court judge:

> Defendant: I want to make this clear. I don't want to have this [sic] as my counselor no longer. I've have [sic] had three counselors out of this Legal Aid Defenders firm, and neither one of them has represented me adequately, so I want to represent myself.
>
> The Court: You want a new lawyer?
>
> Defendant: No. I want to represent myself.
>
> The Court: I don't want to let you do that. Number one, there are some serious issues here involving—well, you've got two capital offenses with which you are charged which could result in life imprisonment.
>
> Defendant: Okay, that's fine.
>
> The Court: Well, it's not fine. If you try to represent yourself you have a very strong likelihood of losing.
>
> Defendant: I'm willing to take that chance, sir.
>
> The Court: You don't even have an understanding of what you're facing. You know you do have—you are familiar somewhat with the criminal justice system. You've been incarcerated under, I think, another name. You've also used—you used both Terrence Banks and Wendell Banks?
>
> Defendant: Indeed.
>
> The Court: All right. The risk that you run in representing yourself are [sic] just too great. I don't think—well, I don't think you're capable of representing yourself in a capital case first of all. Second, you need to have legal counsel. I'm not suppose to advise you as to how to proceed, but when you're faced with these kind of changes (sic), you need legal counsel.
>
> Defendant: And that's fine, sir. I'm a Moors National and we do have a treaty with the United States, therefore the counsel—I can have assistance through the counsel.
>
> The Court: For what counsel?

7

Defendant: From the embassy.

The Court: Where were you born?

Defendant: I was born in Michigan.

The Court: All right. Well, I know your beliefs that you claim you are a citizen of somewhere else, but you have no diplomatic immunity, so you are subject to the laws of this jurisdiction.

Defendant: But, I'm not a Fourteenth Amendment citizen neither.

The Court: I'm not even going to try to debate that with you because what you're saying is complete and utter nonsense.

Defendant: Okay, sir. That's fine.

The Court: And you don't even understand it, that's why you need a lawyer.

Defendant: Excuse me, sir. All I'm asking for is to appear in propria persona. That's all I need for you to do is to grant me that. My risk of losing, that's my risk. I feel like my risk is even greater with this public defender.

The Court: All right. I can appoint someone from another office for you. But, you know, it's going to be a complete disaster, I'm going to tell you, if you try to represent yourself. All this stuff about being a national and these treaties and all that, you need to get that out of your mind.

Defendant: I'm willing to take the chance, sir.

\* \* \*

The Court: All right. I have to appoint someone, a standby counsel.

Defendant: I'm not taking no one.

The Court: Listen to what I'm saying. You're not even paying attention. You need to have a standby counsel. You can represent yourself, but you need to have a standby counsel, somebody to help you make objections with respect to the admission of evidence. And it would—well, you have to have at least a standby counsel. You can represent yourself, but you need standby counsel, somebody to help you make objections with respect to the admission of evidence. You have no background in that. You don't even know the rules of evidence. And it would— well, you have to have at least a standby counsel. You can represent yourself, but you need standby counsel for technical issues. All right.

8

Defendant: So, could you make it a matter of the Court record that I can have more library time over at the jail?

The Court: No. I don't control what goes on in the jail. That's up to the sheriff.

Defendant: You can make it a court order.

The Court: No, it's up to the sheriff. I don't do that. There's no provisions for me to order more library time for you.

Defendant: Okay.

(R. 11-4, PID 188–96.) Following this exchange, defendant was afforded the right to represent himself.

On August 19, 2011, Petitioner argued two motions *pro se*, one challenging the trial court's jurisdiction and the other a motion to dismiss based on procedural grounds. (R. 11-5, PID 200.) The trial court denied both motions. On October 18, 2011, Petitioner appeared *pro se* at his pretrial hearing where he rejected the prosecutor's plea offer. (R. 11-7, PID 276.) On December 1, 2011, the first day of trial, Petitioner was removed as counsel because the trial court determined that his in-court conduct was "a disruption in the proceedings." (R. 11-8, PID 303.) The trial court then appointed standby counsel to represent Petitioner for the remainder of the trial. (*Id.*)

The Michigan Court of Appeals addressed Petitioner's claims as follows:

A. DEFENDANT'S WAIVER WAS UNEQUIVOCAL.

In this case, during the waiver of counsel proceeding, defendant clearly informed the trial court that it was his desire to proceed without benefit of counsel. Defendant stated: 'All I'm asking for is to appear in propria persona. That's all I need for you to do is to grant me that. My risk of losing, that's my risk. I feel like my risk is even greater with this public defender.' Later in the proceeding, defendant clearly reaffirmed his waiver of counsel by stating to the trial court: 'I'm not taking no one.' On this record, there is no question that defendant's waiver of counsel was unequivocal.

B. DEFENDANT'S WAIVER WAS KNOWING, INTELLIGENT, AND VOLUNTARY.

> As previously quoted, the trial court informed defendant that he was facing a maximum sentence of life. The trial court warned defendant that his lack of knowledge of law, specifically the rules of evidence and how to make objections, would make self-representation a problem for defendant. The trial court pleaded with defendant to accept standby counsel to assist defendant in matters such as evidentiary issues. Defendant responded by indicating he was confident that he stood a better chance at trial by representing himself rather than request the trial court appoint new counsel. Thus, defendant was fully apprised of the risks he faced by choosing to represent himself and the record evidence clearly establishes that he knowingly and voluntarily chose to accept those risks.

*Banks*, 2013 Mich. App. LEXIS 696, at *11–12. (The Michigan Court of Appeals also addressed the alleged state procedural errors; specifically, a violation of Mich. Ct. R. 6.005(D) and (E), that Petitioner raises in his amended petition. However, those claims are "not cognizable on federal habeas review unless the state court's ruling was so fundamentally unfair that it amounted to a due process violation." *Hardaway v. Burt*, 846 F.3d 191, 199 (6th Cir. 2017) (citing *Estelle v. McGuire*, 502 U.S. 62, 67 (1991)). Further, while Banks mentioned the issue of Mich. Ct. R. 6.005 in his Petition, his brief is focused on the Sixth Amendment issue.)

Petitioner first argues that the Court should review his waiver of counsel claims *de novo* because the Michigan Court of Appeals did not address the federal constitutional claims that he raised. (R. 13, Page ID 873–75). A state court does not need to mention federal law in its decision to entitle its adjudication to deference under AEDPA. *See Williams v. Curtin*, 613 F.App'x. 461, 463–65 (6th Cir 2015). "When a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits" for purposes of invoking the AEDPA standard of review. *Johnson v. Williams*, 133 S. Ct. 1088, 1096 (2013).

10

In rejecting Petitioner's claim, the Michigan Court of Appeals began by mentioning that "a waiver request must be unequivocal" and that the waiver had to be "knowingly, intelligently, and voluntarily made." *Banks*, 2013 Mich. App. LEXIS 696, at *10. This language mirrors the federal constitutional requirement for a valid waiver of counsel. *See Iowa v. Tovar*, 541 U.S. 77, 88 (2004). This Court concludes that Petitioner's claim was adjudicated on the merits and thus, AEDPA's deferential standard applies.

The Supreme Court has held that a waiver of the Sixth Amendment right to counsel is valid only when it reflects "an intentional relinquishment or abandonment of a known right or privilege." *Patterson v. Illinois*, 487 U.S. 285, 292 (1988) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). A defendant's waiver of his right to counsel must "be knowing, voluntary, and intelligent." *Tovar*, 541 U.S. at 88. The waiver must be "done with sufficient awareness of the relevant circumstances." *Id.* at 81 (internal quotation marks omitted). It is the criminal defendant's burden to prove that he or she "did not competently and intelligently waive" his or her right to the assistance of counsel. *Id.* at 92.

Before a criminal defendant waives his or her right to counsel, he or she "should be made aware of the dangers and disadvantages of self-representation," so that the record establishes that the defendant knows what he or she "'is doing and his choice is made with eyes open.'" *Faretta v. California*, 422 U.S. 806, 835 (1975) (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279 (1942)). The Supreme Court, however, has not "prescribed any formula or script to be read to a defendant who states that he elects to proceed without counsel." *Tovar*, 541 U.S. at 88. The information that a criminal defendant must have in order to make an intelligent election "will depend on a range of case-specific factors, including the defendant's education or sophistication, the complex or easily grasped nature of the charge, and the stage of the

11

proceeding." *Id*. There is no clearly established federal law, as determined by the Supreme Court, which requires a specific colloquy to determine whether a defendant's waiver of counsel was made with "eyes open." *Mack v. Holt*, 62 F.App'x. 577, 580 (6th Cir. 2003); *see also Sullivan v. Pitcher*, 82 F.App'x. 162, 165 (6th Cir. 2003); *United States v. McDowell*, 814 F.2d 245, 248–49 (6th Cir. 1987).

Petitioner contends that the trial judge failed to warn him of the dangers of self-representation before accepting his waiver. But the judge warned petitioner that his case involved "serious issues" and that he was charged with two capital offenses carrying up to life imprisonment. (R. 11-4, PID 190.) The judge warned petitioner that he had a "strong likelihood of losing" if he represented himself. (*Id.* at PID 190.) The judge told petitioner that he did not think he was capable of representing himself on a capital case. (*Id.*) The judge offered to appoint another attorney for petitioner and warned him that it would be a "complete disaster" for him to represent himself at trial. (*Id.* at PID 191.) In appointing standby counsel for petitioner, the judge explained to him that he did not know the rules of evidence and had no background in making objections. (*Id.* at 192.) The Michigan Court of Appeals' rejection of this claim was thus reasonable.

Petitioner next contends that the trial judge should have inquired into the level of petitioner's background, age, education, and mental health before accepting the waiver. As noted above, there is no clearly established federal law concerning the scope of an inquiry by a trial judge prior to accepting a waiver. Although the judge did not specifically ask Petitioner about the extent of his educational background, the judge was obviously aware that Petitioner lacked a legal education and warned him that his lack of legal training would be a disadvantage. The judge also repeatedly told petitioner that he should continue to be represented by counsel. Under

12

the circumstances, it was not unreasonable for the Michigan Court of Appeals to conclude that Petitioner's waiver was valid. *See United States v. Clark*, 591 F.App'x. 367, 372 (6th Cir. 2014). Moreover, in light of the fact that petitioner engaged in a clear and lucid colloquy with the judge, there was no reason for the judge to question petitioner's mental competency to waive his right to counsel. *Id.*

Petitioner next claims that his waiver was not voluntary because he was faced with the "Hobson's Choice" between proceeding with incompetent counsel who was unprepared for trial or representing himself.[1] The Sixth Circuit recently noted that the Supreme Court has yet to address such a claim:

> Because the Supreme Court has never confronted a situation in which a defendant decided to waive counsel due to his attorney's lack of preparedness, we have doubts about whether any 'clearly established' Supreme Court law applies here. . . . Additionally, no Supreme Court precedent explains just how unprepared counsel must be before a court may deem a waiver of counsel to be involuntary, nor does any Supreme Court holding address the question whether a mistaken but reasonable belief that counsel is unprepared suffices to render a waiver of counsel involuntary. . . .

*Pouncy v. Palmer*, 846 F.3d 144, 161 (6th Cir. 2017). The Court went on to explain that *Iowa v. Tovar*, 541 U.S. 77 (2004), *Faretta v. Cal.*, 422 U.S. 806 (1975), and *Johnson v. Zerbst*, 304 U.S. 458 (1938) could potentially support such a claim—but only if the petitioner could prove that "appointed counsel was actually incompetent." *Id.* Similarly here, Petitioner argues that his waiver of counsel was invalid because his attorney was unprepared. Petitioner has not made any

---

[1] It does not appear that Banks raised this particular argument before the Michigan Court of Appeals. (R. 11-12, PID 689–91.) However, Respondent has not argued that Banks failed to exhaust any of his claims. (R. 15, PID 904.) Moreover, the Court believes that this claim is "appropriately characterized as presenting not an independent claim, but rather emphasizing new evidence or argumentation in support of an old claim" and therefore the state-court's rejection of it is entitled to AEDPA deference. *Pouncy v. Palmer*, 846 F.3d 144, 159 (6th Cir. 2017).

showing as to why his attorney was unprepared to proceed to trial, or that his attorney was incompetent.

Finally, Petitioner argues that the judge did not obtain a right-to-counsel waiver at any of the post-July 11 hearings. However, a valid waiver of counsel "remains in effect at subsequent proceedings in the absence of an explicit revocation by the defendant or a change of circumstances that would suggest that the [trial] court should make a renewed inquiry of the defendant." *United States v. McBride*, 362 F.3d 360, 367 (6th Cir. 2004); *see also United States v. Modena*, 302 F.3d 626, 630–31 (6th Cir. 2002). The Court already found that the Michigan Court of Appeals' determination of a valid waiver was reasonable. Because there is no indication that petitioner ever revoked that waiver, or that there were a change of circumstances warranting revisiting the issue (*see* R. 13, PID 878), it was unnecessary for the judge to obtain a waiver of counsel from petitioner at any of his subsequent hearings.

For these reasons, Petitioner is not entitled to habeas relief on his waiver of counsel claim.

## B.

Petitioner next claims that the Double Jeopardy clause was violated because the judge did not instruct the jury properly on the charge of assault with intent to commit murder and the lesser included offense of assault with intent to do great bodily harm less than murder, leading to a conviction on both charges.

The Michigan Court of Appeals rejected this claim as follows:

> The trial court did not abuse its discretion or commit a double jeopardy violation by giving jury instructions for the charges of assault with intent to commit murder and assault with intent to do great bodily harm. In *People v Cornell*, 466 Mich 335, 357; 646 NW2d 127 (2002), the Michigan Supreme Court held 'that a requested instruction on a necessarily included lesser offense is proper if the charged greater offense requires the jury to find a disputed factual element that is

14

not part of the lesser included offense and a rational view of the evidence would support it.' 'The *Cornell* Court concluded that instructions on 'cognate' lesser offenses, which contain one element or some elements not found in the greater offense, are no longer permitted under MCL 768.32(1).' *People v Brown*, 267 Mich App 141, 146; 703 NW2d 230 (2005). The specific intent to do great bodily harm required to convict defendant of assault with intent to do great bodily harm, is different from the specific intent to kill that is required to sustain a conviction of assault with intent to commit murder. *Id.* 149–150. 'Therefore, assault with intent to do great bodily harm less than murder is a necessarily included lesser offense of assault with intent to commit murder.' *Id.*

As stated *supra*, assault with intent to do great bodily harm is a necessarily included lesser offense of assault with intent to commit murder. Therefore, defendant was not denied a fair trial because the trial court gave separate jury instructions for the charges of assault with intent to commit murder and assault with intent to do great bodily harm. The trial court listed the charges on the verdict form as listed under the felony information. In addition, the trial court stated, 'The Court would interject itself if the defendant were found guilty of both the assault with intent to murder and great bodily harm[.]' As a result, defendant was sentenced for his conviction of assault with intent to commit murder so that he would not be deprived of his double jeopardy rights. Finally, defendant's double jeopardy claim is meritless because the trial court vacated his assault with intent to do great bodily harm sentence. Thus, there is no violation of defendant's constitutional right against double jeopardy.

*Banks*, 2013 Mich. App. LEXIS 696 at *17–19 .

Applying AEDPA deference, the Court will not disturb the Court of Appeals' determination. It appears that upon sentencing, the trial judge addressed the double jeopardy issue as follows: "The second charge, assault with intent to commit great bodily harm less than murder, you will be sentenced as a fourth habitual offender to a minimum of twenty, to a maximum of forty years in the Michigan Department of Corrections. However, because that conviction was based on the exact same factual occurrence and circumstances as the assault with intent to murder, I will vacate that sentence on the second charge." (R. 11-1, PID 650.) Thus, the trial judge vacated sentence on the lesser-included offense, but it does not appear that the trial judge vacated the conviction. (*See also* R. 11-1, PID 123 (reflecting conviction on both assault with intent to murder and assault to do great bodily harm less than murder).)

15

The double jeopardy clause "affords three protections to the criminal defendant. The first two, which are the most familiar, protect against a second prosecution for the same offense after acquittal, and against a second prosecution for the same offense after conviction." *Jones v. Thomas*, 491 U.S. 376, 380–81 (1989) (citing *Ohio v. Johnson*, 467 U.S. 493, 498 (1984)). The third, which applies here, is "the protection against 'multiple punishments for the same offense' imposed in a single proceeding." *Id.* (citing *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969)). This third protection does "no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Missouri v. Hunter*, 459 U.S. 359, 366 (1983). Therefore, by vacating the sentence on the lesser-included offense, the trial judge achieved the protection afforded by the double jeopardy clause with respect to Banks's sentence. *See Jones*, 491 U.S. at 382.

But in *Jones*, the petitioner's *conviction* on the other offense had also been vacated. *Id.* Banks's was not. In *Ball v. United States*, 470 U.S. 856, 865 (1985), the Supreme Court explained that a "second conviction, even if it results in no greater sentence, is an impermissible punishment." This is because a conviction creates "potential adverse collateral consequences that may not be ignored[.]" *Id.* Thus, in the ineffective-assistance-of-counsel context, the Sixth Circuit has held that a petitioner could show prejudice based on his counsel's failure to challenge a conviction on double-jeopardy grounds—"That the trial court imposed concurrent sentences for [petitioner's] convictions does not eliminate the prejudice that he may suffer as a result of an erroneous conviction and sentence." *Shinholster v. Bradshaw*, No. 14-3026, 2014 U.S. App. LEXIS 24993, at *6 (6th Cir. Nov. 26, 2014). Indeed, the Supreme Court has stated, "Under *Ball*, the collateral consequences of a second conviction make it as presumptively impermissible

16

to impose as it would be to impose any other unauthorized cumulative sentence." *Rutledge v. United States*, 517 U.S. 292, 302 (1996).

However, it does not appear that Petitioner is raising a claim pursuant to *Rutledge*—he is only concerned with his "sentence." (R. 13, PID 880.) As noted above, the Court of Appeals' determination was reasonable as to the trial court's decision to impose sentence for the greater, but not the lesser, offense. Even if Petitioner were seeking to vacate his conviction, federal courts have declined to apply *Ball* as "clearly established" Supreme Court case law on habeas review. *See, e.g.*, *Tavarez v. Larkin*, 814, F.3d 644, 649 (2d Cir. 2016). Further, the "concurrent sentence" doctrine might also bar this claim as moot—given Banks's 40-year minimum sentence on the assault with intent to commit murder conviction, any collateral consequences from the intent-to-commit-great-bodily-harm conviction are speculative. *See Benton v. Maryland*, 395 U.S. 784 (1969); *Nowakowski v. New York*, 835 F.3d 210, 225 (2d Cir. 2016).

Accordingly, Petitioner is not entitled to habeas relief for this claim.

## C.

Petitioner next claims that his Sixth Amendment right to confrontation was violated when the victim was permitted to conceal his identity while testifying at the preliminary examination. The preliminary examination occurred on May 13, 2011. (R. 11-2.) At that time, because Mayen "ha[d] some fear of retaliation," the trial court granted the prosecution's request to allow him to testify with a hood over his head. (*Id.* at PID 135.) The Michigan Court of Appeals addressed this claim under plain-error review as follows:

> Defendant has failed to demonstrate that the trial court violated his constitutional right to confront an accusatory witness by allowing the victim to wear a hood during defendant's preliminary examination. Considering the facts, it was reasonable for the victim to feel 'some fear of retaliation' after the allegations of defendant's gun violence. Therefore, it was not unreasonable for the court to allow the victim to testify with a hood. In addition, defendant has failed to

17

demonstrate that he was not afforded the right to confront the victim during his preliminary examination testimony. The victim was cross-examined, under oath, in the presence of defendant by defense counsel at the preliminary examination. Also, there is no evidence that the court was unable to observe the victim's demeanor. Therefore, defendant's argument is without merit.

*Banks*, 2013 Mich. App. LEXIS 696, at *19–20.

Assuming *de novo* review, Petitioner is not entitled to relief on this claim. *See Trimble v. Bobby*, 804 F.3d 767, 777 (6th Cir. 2015) (highlighting Sixth Circuit case law inconsistencies on whether plain error review amounts to a decision on the merits warranting AEDPA deference instead of *de novo* review).

The confrontation clause is satisfied when the witness testifies at trial and is subject to unrestricted cross-examination. *United States v. Owens,* 484 U.S. 554, 560 (1988); *see also Crawford v. Washington,* 541 U.S. 36, 59, n. 9 (2004); *U.S. v. Mayberry*, 540 F.3d 506, 516 (6th Cir. 2008). Also, "the United States Supreme Court has repeatedly stated that the right to confrontation is basically a trial right." *Peterson v. California*, 604 F.3d 1166, 1169 (9th Cir. 2010) (citing cases). Thus, there is extensive case law declining to apply the confrontation right to "various pre-and post-trial proceedings," including preliminary examinations. *United States v. Mitchell-Hunter*, 663 F.3d 45, 51 (1st Cir. 2011) (collecting cases). And *Crawford v. Washington*, 541 U.S. 36 (2004) and its progeny do not alter these holdings because those cases arose in the "context of trial." *Mitchell-Hunter*, 663 F.3d at 51.

Here, it is undisputed that Mayen testified at trial without the hood, and Petitioner's counsel was able to cross-examine him at that time. Petitioner's counsel was able to elicit that Mayen had worked a fifteen hour day on the day of the shooting and question Mayen's recollection of how many shots were fired. (R. 11-9, PID 529–37.) Moreover, even at the preliminary hearing, Petitioner's counsel was able to cross-examine Mayen even though he was

wearing the hood, and Mayen identified himself by name at that time. The Court does not discern a confrontation clause violation where a witness states his name publicly but conceals his face during a preliminary examination, and then testifies without disguise during trial, and counsel has the opportunity to cross-examine the witness in both instances.

Petitioner also claims that allowing the victim to wear a hood was a *Brady* violation because it interfered with the prosecution's purported duty to "ensure that the identity of the alleged victim is known to the defendant." (R. 11-12, PID 726.) Because it appears that the Michigan Court of Appeals did not address this *Brady* issue, the Court will apply *de novo* review.

A *Brady* violation involves three components: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory or because it is impeaching; (2) the evidence must have been suppressed by the state, either willfully or inadvertently; and (3) prejudice must have ensued. *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999). Mayen's identity was not suppressed by the state—he stated his name for the record. (R. 11-2, PID 136.) And given that the victim testified without a hood at trial, there was no prejudice to Petitioner. In sum, Petitioner was on notice as to Mayen's identity because Mayen identified himself for the record at the preliminary examination, Mayen testified without the hood at trial, and there is no indication that anything about the trial prevented a full cross-examination. *See Maglaya v. Buchkoe*, 515 F.2d 265, 269 (6th Cir. 1975).

For these reasons, Petitioner is not entitled to habeas relief on his claims arising from Mayen wearing a hood at the preliminary examination.

**D.**

Petitioner also claims that his attorney was ineffective because he only met with Petitioner for a few minutes prior to the preliminary examination, and failed to object to the concealment of Mayen's face.

The Michigan Court of Appeals addressed this claim as follows:

First, as stated *supra*, permitting the victim to wear a hood during the preliminary examination did not deprive defendant of his right to confront the prosecution's witness. Therefore, defense counsel was not obligated to raise a futile objection. *See Ericksen*, 288 Mich App at 201. In addition, defendant has failed to show that trial counsel's failure to meet with defendant minutes before the preliminary examination, and counsel's alleged failure to inform defendant of victim's intention to wear a hood during the preliminary examination, would have changed the result of the proceeding. *See Russell*, Mich App at (slip op at 1) (stating that a defendant must show that, but for counsel's deficient performance, a different result would have been reasonably probable). There is no indication that trial counsel habitually met with defendant only minutes prior to any other hearings. More importantly, there is no record evidence to determine if, in fact, defendant's allegations are true. Therefore, defendant's claims of ineffective assistance of counsel are without merit.

*Banks*, 2013 Mich. App. LEXIS 696 at *22–23. "An ineffective assistance claim has two components: A petitioner must show that counsel's performance was deficient, and that the deficiency prejudiced the defense." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).

To succeed on the performance prong, Petitioner must identify acts that were "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690; *see Cullen v. Pinholster*, 131 S. Ct. 1388, 1407 (2011). To satisfy the prejudice prong, Petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is one that is "sufficient to undermine confidence in the outcome." *Id.*

"When a state prisoner asks a federal court to set aside a sentence due to ineffective assistance of counsel," and a state court has already rejected the ineffective-assistance claim "on the merits" as here, Supreme Court precedent "require[s] that the federal court use a 'doubly deferential' standard of review that gives both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 134 S. Ct. 10, 13 (2013); *accord Harrington v. Richter*, 562 U.S. 86, 105 (2011) ("The standards created by *Strickland* and [section] 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." (internal citation omitted)). However, "When a state court relied only on one *Strickland* prong to adjudicate an ineffective assistance of counsel claim, AEDPA deference does not apply to review of the *Strickland* prong not relied upon by the state court. The unadjudicated prong is reviewed de novo." *Rayner v. Mills*, 685 F.3d 631, 638 (6th Cir. 2012).

Given that Mayen ultimately testified without the hood at trial, and given the other overwhelming evidence of guilt in this case, the Michigan Court of Appeals reasonably determined that even if counsel had objected, there was no reasonable probability that the outcome of the proceeding would have been different. That is to say, the Michigan Court of Appeals reasonably determined that there was no prejudice to Petitioner arising out of counsel's allegedly deficient performance.

Petitioner is not entitled to habeas relief on this claim.

## E.

Petitioner's last claim is that he was denied a fair trial due to prosecutorial misconduct. The Michigan Court of Appeals addressed this claim as follows:

> The prosecutor did not commit prosecutorial misconduct when he asserted that the jury could decide whether the victim's testimony was credible. . . . .

21

Defendant mischaracterizes the prosecutor's statement during his closing argument. Defendant argues, 'The prosecution asserted the testimony of [the victim] was 'The Truth', and that no further testimony would have been needed.' During closing argument, the prosecutor stated, 'And to be honest, this trial could have been shorter. I could have stopped right there because as the trier of the fact, if you believe the testimony of [the victim], that's enough. That's the truth. You decide what happened. So if you believe his testimony then that was enough.' The prosecutor's statement did not reference that the victim's testimony was 'The Truth,' but argued that his testimony provided sufficient evidence of defendant's guilt if the jury found the victim to be credible. The prosecutor commented on the credibility of the victim, which is proper because the victim was the prosecution's witness. *See Thomas*, 260 Mich App 455. Therefore, defendant has failed to demonstrate that the prosecutor attempted to place the credibility of his office behind the case or suggest that he possessed extrajudicial information. *See Reed*, 449 Mich at 399. Thus, defendant's prosecutorial misconduct argument is without merit.

*Banks*, 2013 Mich. App. LEXIS 696, at *23–25.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)). A prosecutor's improper comments will be held to violate a criminal defendant's constitutional rights only if they "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). Prosecutorial misconduct will thus form the basis for habeas relief only if the conduct was so egregious as to render the entire trial fundamentally unfair based on the totality of the circumstances. *Donnelly v. DeChristoforo*, 416 U.S. at 643–45. Because the Michigan Court of Appeals decided the prosecutorial misconduct claim on the merits, Petitioner must show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Parker v. Matthews*, 132 S. Ct. 2148, 2155 (2012) (quoting *Harrington*, 562 U.S. at 103).

The Michigan Court of Appeals' rejection of the prosecutorial-misconduct claim was reasonable. The prosecutor did not argue that he had any special knowledge about the victim that had not been presented to the jury. There was no improper vouching because the prosecutor did not improperly "assert or imply that he drew from anything but [the victim's] trial testimony to argue that [he] was credible." *Cockream v. Jones*, 382 F.App'x. 479, 485 (6th Cir. 2010). Indeed, the prosecutor did even not go so far as to tell the jury they should believe Mayen—he merely stated that if the jury credited Mayen's testimony, that would be enough to convict. Again, he stated: "And to be honest, this trial could have been shorter, I could have stopped right there [after Mayen's testimony] because as the triers of fact, if you believe the testimony of Mr. Mayen, that's enough. That's the truth. You decide what happened. So if you believe his testimony, then that was enough." (R. 11-10, PID 591.) The prosecutor went on to point out that there were "a number of people that are backing up the testimony of Mr. Mayen[.]" (*Id.* at PID 592.) Accordingly, the prosecutor merely argued that the record evidence supported Mayen's account of what happened, and that if the jury believed that account, they should find Petitioner guilty.

Petitioner also argues that the prosecutor committed a fraud upon the court by falsely representing to the examining magistrate that the victim had medical complications that prevented him from attending the preliminary examination and that on one occasion he was too fearful to testify, thus leading to three adjournments of the preliminary examination.

The Michigan Court of Appeals declined to address this claim on direct review:

> Defendant also argues that the prosecutor misrepresented the facts concerning the victim's availability for the preliminary examination, and thus, the trial court did not have good cause to adjourn the preliminary examination three separate times. The Michigan Supreme Court has held that 'a defendant must raise the issue of a twelve-day rule violation immediately before the commencement of the preliminary examination. Failure to raise the issue waives appellate review on the

question.' *People v Crawford*, 429 Mich 151, 168; 414 NW2d 360 (1987). Defendant failed to raise this issue immediately before the commencement of the preliminary examination. Therefore, the issue is waived.

*Banks*, 2013 Mich. App. LEXIS 696, at *25. Accordingly, Respondent argues that this claim has been procedurally defaulted. (R. 15, PID 975.)

Even if the Court were to find that the claim was not procedurally defaulted pursuant to *Henderson v. Palmer*, 730 F.3d 554, 559 (6th Cir. 2013), habeas relief would not be warranted. Petitioner claims that he "had the records to prove" that "the statements offered by the prosecution were clear and utter falsehood." (R. 13, Page ID 886). However, petitioner did not provide those records to the Michigan Court of Appeals as part of his Rule 4 Supplemental Brief on Appeal, nor has he provided them to this Court. Habeas relief will not be granted based on conclusory allegations of prosecutorial misconduct. *See Johnson v. Renico*, 314 F. Supp. 2d 700, 710 (E.D. Mich. 2004). Because petitioner's second prosecutorial misconduct claim is unsupported, he is not entitled to habeas relief.

## IV.

For the reasons set forth above, the Court will not grant Banks the relief requested in his amended petition. The Court also believes that no reasonable jurist would find that Banks's claims have merit, so a certificate of appealability will not issue from this Court. *See Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). But if Banks nonetheless chooses to appeal, he may proceed *in forma pauperis*. *See* 28 U.S.C. § 1915(a)(3).

Accordingly, IT IS ORDERED the Petition for Writ of Habeas Corpus (R. 13) is DENIED.

It is further ORDERED that a Certificate of Appealability is DENIED.

It is further ORDERED that Walker may proceed *in forma pauperis* on appeal.

SO ORDERED.

s/Laurie J. Michelson
LAURIE J. MICHELSON
Dated: July 15, 2017            U.S. DISTRICT JUDGE

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 15, 2017.

s/Keisha Jackson
Case Manager